1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

GARY DEWAYNE BEARDEN,                )   No. C 05-1427 MMC (PR)
                                     )
                Plaintiff,           )   **ORDER GRANTING MOTION FOR**
                                     )   **SUMMARY JUDGMENT;**
        v.                           )   **DENYING PLAINTIFF'S PENDING**
                                     )   **MOTIONS**
CHIEF MEDICAL OFFICER LEE,           )
                                     )   (Docket Nos. 26, 42, 46)
                Defendant.           )
_____     )

On April 7, 2005, plaintiff Gary Dewayne Bearden, a California prisoner proceeding

pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983. On June 8, 2005,

after liberally construing the complaint, the Court found plaintiff had stated a cognizable

claim against Salinas Valley State Prison ("SVSP") Chief Medical Officer Dr. Lee ("Dr.

Lee"), for deliberate indifference to plaintiff's serious medical needs. Dr. Lee has filed a

motion for summary judgment, plaintiff has filed an opposition, and Dr. Lee has filed a reply.

**FACTUAL BACKGROUND**[1]

Plaintiff was sentenced to a term of life in state prison in 1979. (See Decl. M. Grigg

Supp. Mot. Summ. J. ("Grigg Decl.") Ex. A (Pl.'s Depo.) at 14:20-23.) He has been

suffering from lower back problems since 1985. (Id. at 15:18-20.) From May 15, 2001 until

July 21, 2003, plaintiff was housed at Lancaster State Prison. (Id. at 14:11-12.) On

February 25, 2003, plaintiff received a back x-ray. (See id. at 17:14-17; Compl. at 5; Decl.

---

[1]Except where otherwise noted, the facts set forth in the background section are not
disputed by the parties.

**United States District Court**
For the Northern District of California

K. Harrington Supp. Mot. Summ. J. ("Harrington Decl.") ¶ 3.)  On April 23, 2003, plaintiff filed an administrative appeal at the informal level of review, asking for the x-ray results, treatment, and an explanation as to why he "was not seen by the doctor sooner." (Compl. at 5.)  On May 8, 2003, plaintiff received a response to his appeal, stating that he had been referred to his "yard physician." (Id.)  On May 11, 2003, plaintiff filed an appeal at the first formal level of review, stating he still had not received the x-ray results. (Id.)  On June 26, 2003, plaintiff received the following response to his first level appeal:

> On June 17, 2003, Dr. Fortaleza, Staff Physician[,] interviewed the appellant in person to allow him the opportunity to fully explain his appeal.  X-rays were in the file and the results were discussed with the appellant.  Dr. Fortaleza completed a medical evaluation.  The x-ray technician at CSP-LAC was unavailable for a time and all x-rays had to be sent out to be read.  Had the report indicated an urgent condition, the institution would have been notified.

(Pl.'s Compl. at 6.)  The decision informed plaintiff that his appeal had been granted at the first level of review, insofar as he had been seen by the physician for a follow-up consultation and had been provided with the x-ray results. (Id.)

The x-ray report form in plaintiff's medical file shows the x-ray was interpreted as showing degenerative disc disease. (Pl.'s Compl. at 9; Harrington Decl. ¶ 4.)  On June 17, 2003, Dr. Fortaleza, the Lancaster Staff Physician who saw plaintiff on that date, wrote in plaintiff's medical records that plaintiff would be referred for an MRI and a neurological consultation. (Compl. at 7-8.)  Neither referral occurred before plaintiff was transferred to SVSP on July 21, 2003. (Compl. at 3.)

Plaintiff contends that soon after he arrived at SVSP, Dr. Lee, the Chief Medical Officer at SVSP, would have screened his medical records and seen that he was to receive an MRI. (Pl.'s Opp. M. Summ. J. ("Opp.") at 1-2.)  Consequently, when plaintiff did not hear from Dr. Lee about the MRI referral, he wrote to Dr. Lee; approximately six months later, in February or March of 2004, Dr. Lee called plaintiff to the treatment center to discuss plaintiff's concerns. (See id. at 2, 6; Grigg. Decl., Ex. A at 40:23-41:2.)  According to plaintiff, Dr. Lee reviewed plaintiff's medical file, and told plaintiff: "[Y]ou don't want anyone to operate on your back[;] you may be worse off than you are now." (See Pl.'s

Answer to Def.'s Req. for Jury Trial at 1; Pl.'s Opp. at 2.)   Plaintiff states Dr. Lee refused to approve the MRI, because an MRI is used only when considering surgery and Dr. Lee saw no need for surgery.  See id.

Dr. Lee denies he ever met with plaintiff; he states he has no recollection of the meeting and that no documents evidence its occurrence.  (See Decl. Charles Lee, M.D., in Supp. M. Summ. J. (Lee Decl.) ¶ 4.)  Dr. Lee, as SVSP's Chief Medical Officer, does review treating physicians' recommendations for certain diagnostic tests, including MRIs.  (Id. ¶ 3.)  Pursuant to established procedure, if Dr. Lee questioned the propriety of a test a physician had requested, he would not deny the test, but would present the matter to the Medical Review Advisory Committee.  (Id.)  As a rule, Dr. Lee would not respond to an inmate's letter about medical issues by arranging a face-to-face meeting; instead, he would refer the issue to a treating physician or nurse, as appropriate.  (Id. ¶ 4.)  As a radiologist, Dr. Lee would defer to others more qualified regarding a patient's need for back surgery, and, consequently, he would not have recommended that plaintiff never have back surgery unless he was relaying information from someone qualified to make such a determination.  (Id. ¶ 5.)  Similarly, he would not oppose an MRI he had reason to believe was medically necessary.  (Id.)  Because Dr. Lee does not function as a treating physician at SVSP, he also would not have independently determined whether plaintiff should have more or different pain medication.  (Id. ¶ 6.)  Dr. Lee suspects plaintiff has confused him with another member of the SVSP healthcare team.  (Id. ¶ 4.)

Plaintiff's medical records reveal no medical request slips regarding back-related complaints from the date of his arrival at SVSP on July 21, 2003, through July 30, 2004.  (See Harrington Decl. ¶¶ 6-7.)  On July 30, 2004, plaintiff complained about back pain and was prescribed ibuprofen, twice a day for thirty days.  (Id. ¶ 8.)  On September 1, 2004, plaintiff again complained about back pain, and was evaluated by SVSP physician and surgeon Dr. Robert Bowman ("Dr. Bowman").  Dr. Bowman prescribed Motrin, as needed, for pain.  (Id.).  In January 2005, plaintiff received a prescription for Methadone, a pain medication, and a referral for an MRI, both of which were approved by Dr. Lee.  (Pl.'s Opp.

3

at 4.)  On April 22, 2005, plaintiff received an MRI for his back; the MRI showed "severe disc disease."  (Pl.'s Opp., Ex. A.)  In October 2005, an outside physician, who conducted a "tele-examination" of plaintiff, concluded that a surgical procedure would have a sixty percent chance of providing plaintiff with significant relief, and a forty percent chance of leaving the condition unchanged or worse.  (Harrington Decl. ¶ 10.)  Dr. Lee approved of and scheduled the surgery.  (Grigg Decl., Pl.'s Depo. at 38:9-10.)  On December 31, 2005, prison officials came to take plaintiff from his cell to U.C. Davis for the surgery.  Because plaintiff had no prior warning that he would be taken at that time, he had not arranged for his personal property to be removed from his cell, inventoried, and put in a safe place until his return.  Consequently, he refused to leave his cell for the surgery.  (Id. at 38:13-39:22)  As of February 17, 2006, the date of plaintiff's deposition in the instant matter, the surgery had not been rescheduled.  (Id. at 41:19-23.)  When, at plaintiff's deposition, plaintiff was asked by Dr. Lee's attorney whether he intended to have the surgery, plaintiff responded:  "Depends. It depends."  (Id. at 41:24-25.)

## DISCUSSION

A.    Legal Standard

Summary judgment is proper where the pleadings, discovery and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect

United States District Court
For the Northern District of California

outcome of suit under governing law; further holding dispute about material fact is genuine
"if the evidence is such that a reasonable jury could return a verdict for the nonmoving
party").  The moving party bears the initial burden of identifying those portions of the record
that demonstrate the absence of a genuine issue of material fact.  The burden then shifts to
the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the
'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts
showing that there is a genuine issue for trial.'"  See Celotex, 477 U.S. at 324 (citing Fed. R.
Civ. P. 56(e)).

In considering a motion for summary judgment, the court must view the evidence in
the light most favorable to the nonmoving party; if, as to any given fact, evidence produced
by the moving party conflicts with evidence produced by the nonmoving party, the court
must assume the truth of the evidence set forth by the nonmoving party with respect to that
fact.  See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  The court's function on
a summary judgment motion is not to make credibility determinations or weigh conflicting
evidence with respect to a disputed material fact.  See T.W. Elec. Serv. v. Pacific Elec.
Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

B.    Analysis

Dr. Lee argues he is entitled to summary judgment on the ground plaintiff did not
exhaust his administrative remedies, as well as on the merits.  For the reasons discussed
below, the Court finds lack of exhaustion is dispositive of plaintiff's claim, and will grant
summary judgment on that ground.

1.    The Exhaustion Requirement

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321
(1996) ("PLRA") provides:  "No action shall be brought with respect to prison conditions
under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison,
or other correctional facility until such administrative remedies as are available are
exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and not left to the discretion of
the district court.  Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006) (citing Booth v. Churner,

532 U.S. 731, 739 (2001)). Exhaustion is a prerequisite to all prisoner lawsuits concerning prison life, whether such actions involve general conditions or particular episodes, whether they allege excessive force or some other wrong, and even if they seek relief not available in grievance proceedings, such as money damages. Porter v. Nussle, 534 U.S. 516, 524 (2002).

The State of California provides its prisoners and parolees the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, (2) first formal written appeal on a CDC 602 inmate appeal form, (3) second formal level appeal to the institution head or designee, and (4) third formal level appeal to the Director of the California Department of Corrections and Rehabilitation ("Director"). See Barry v Ratelle, 985 F. Supp 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). See id. at 1237-38.

2. Waiver

Dr. Lee has raised the exhaustion defense for the first time in his motion for summary judgment. Nonexhaustion under § 1997e(a) is an affirmative defense; defendants have the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003). Ordinarily, the affirmative defense of nonexhaustion should be raised in an unenumerated Rule 12(b) motion. See id.

Ordinarily, if an affirmative defense is not set forth in the first responsive pleading, it is deemed waived. See e.g., United States Postal Serv. v. American Postal Workers Union, 893 F.2d 1117, 1122 (9th Cir.), cert denied, 498 U.S. 820 (1990); Fed. R. Civ. P. 8(c).[2] Nevertheless, "[in] the absence of a showing of prejudice . . . an affirmative defense may be

---

[2]Plaintiff has not raised the issue of waiver. The Court nonetheless addresses said issue herein.

United States District Court
For the Northern District of California

1    raised for the first time at summary judgment." Camarillo v. McCarthy, 998 F.2d 638, 639

2    (9th Cir. 1993).  See, e.g., Paine v. City of Lompoc, 265 F.3d 975, 981 n.1 (9th Cir. 2001)

3    (finding no waiver where absolute immunity raised as affirmative defense for first time in

4    motion for summary judgment and plaintiff did not argue he suffered prejudice due to delay

5    in assertion of such defense);  Sharer v. Oregon, 481 F. Supp. 2d 1156, 1165 (D. Or. 2007)

6    (finding no waiver where statute of limitations raised as affirmative defense for first time in

7    motion for summary judgment and plaintiff made no showing of prejudice); Scott v. Garcia,

8    370 F. Supp. 2d 1056, 1065 n.8 (S.D. Cal. 2005) (finding no waiver where statute of

9    limitations raised as affirmative defense for first time in motion for summary judgment and

10   plaintiff had been placed on notice of defense and had opportunity to conduct discovery);

11   Petteruti v. United States, 2003 WL 22461990, *3 (N.D. Cal. 2003) (finding no waiver where

12   statute of limitations raised as affirmative defense for first time in motion for summary

13   judgment and plaintiff did not claim prejudice); Chabot v. Washington Mutual Bank, 369

14   B.R. 1, 14 (Bankr. D. Mont. 2007) (finding no waiver where statute of limitations raised as

15   affirmative defense for first time in motion for summary judgment and plaintiff failed to

16   argue or show prejudice).

17        In Panaro v. City of North Las Vegas, 432 F.3d 949 (9th Cir. 2005), a case with

18   particular relevance to the instant matter, the Ninth Circuit held the defendants were entitled

19   to raise, for the first time in a motion for summary judgment, the affirmative defense of

20   nonexhaustion under § 1997e(a), where such defense was unavailable to the defendants at the

21   time they responded to the complaint and where the plaintiff did not assert any prejudice

22   therefrom.  See id. at 953; see also Tron v. United States, 2006 WL 2599348, * 3 n.3 (D. Or.

23   2006), (relying on Panaro and finding no waiver of § 1997e exhaustion as affirmative

24   defense where such defense raised for first time in motion for summary judgment and

25   plaintiff did not assert he had suffered any prejudice as result).

26        As noted, in the instant action, Dr. Lee first raised exhaustion as a defense in his

27   motion for summary judgment.  Plaintiff has not claimed he was prejudiced by Dr. Lee's

28   failure to raise the defense in a responsive pleading.  Moreover, no prejudice is apparent from

United States District Court
For the Northern District of California

1    the record.  In particular, it is undisputed that plaintiff was aware of the exhaustion

2    requirement when he filed the instant action.  In the section of his form complaint designated

3    for identification of administrative grievances or appeals, plaintiff states he appealed his

4    claim to the informal and formal levels of review, and that he was granted relief at the first

5    level of review but that his request for relief was never honored.  (Compl. at 2.)  Plaintiff has

6    provided the institutional log numbers for those appeals, and also has attached copies of the

7    appeals to his complaint.  (Compl. at 2, 5, 6.)  Plaintiff further states he appealed his claim to

8    the second and thirds levels of review, but that those appeals were denied because they were

9    untimely and the relief he had requested had already been granted.  (Compl. at 2.)  Further,

10   as set forth by plaintiff in the section of his form complaint designated for the facts of the

11   claim, the entirety of plaintiff's statement of facts concerns his assertion that he was granted

12   an administrative appeal for an MRI when he was at Lancaster State Prison in 2003, but that

13   the appeal was not honored by Dr. Lee at SVSP.  (See Compl. at 3.)

14          The facts regarding the administrative appeals plaintiff pursued in 2003 are

15   undisputed.  With respect to the instant affirmative defense, the sole question is whether

16   plaintiff's pursuit of those appeals served to exhaust the claim he brings against Dr. Lee

17   herein.  Plaintiff does not contend he requires further discovery in that regard, and, as

18   discussed below, has argued extensively in support of his position that he has satisfied the

19   exhaustion requirement.  The Court finds plaintiff has not been prejudiced by Dr. Lee's

20   having first raised lack of exhaustion in his motion for summary judgment.

21          Accordingly, the Court finds the defense has not been waived.

22          3.    Failure to Exhaust

23          Dr. Lee argues that plaintiff did not exhaust his administrative remedies with respect

24   to his claim against Dr. Lee because the administrative appeal plaintiff submitted at

25   Lancaster State Prison on April 23, 2003, which was partially granted on June 23, 2003,

26   requested only that plaintiff be provided with a report regarding the x-ray he had received on

27   February 25, 2003, and with follow-up treatment.  Plaintiff argues he exhausted his

28   administrative remedies because when his appeal was granted, he was told he would be

referred for an MRI, and Dr. Lee was required to comply with that referral. As discussed below, the Court finds plaintiff has not exhausted his administrative remedies with respect to his claim that Dr. Lee refused to refer him for an MRI at SVSP in 2004.

None of the administrative appeals plaintiff has attached to his complaint contains a request for referral for an MRI. The informal and first level appeals plaintiff filed in April and May 2003 sought only to compel medical staff at Lancaster State Prison to provide plaintiff with the results of the x-ray he had received in February 2003 and with follow-up treatment. (Compl. at 6.) The recommendation that plaintiff be referred for an MRI originated on June 17, 2003, when plaintiff was seen by Dr. Fortaleza *in response* to plaintiff's appeals. At that meeting, Dr. Fortaleza wrote in plaintiff's medical records that plaintiff would be referred for an MRI and a neurological consultation. (Id. at 7-8.) On June 26, 2003, when plaintiff's appeal was granted at the first level of review, the decision on appeal informed plaintiff that his appeal had been granted because he had been seen by the physician for a follow-up consultation and had been provided with the x-ray results. (Id. at 6.)

Plaintiff states he also pursued appeals at Lancaster State Prison at the second and third levels of review, and that those appeals were denied for the reason that plaintiff's appeal had already been granted. (Id.) Plaintiff does not provide further information as to the specific content of these second and third level appeals, nor does he attach copies of them to his complaint. If, however, the appeals were denied because plaintiff's appeal had already been granted, the inference to be drawn is that the second and third level appeals addressed the same subject matter as plaintiff's earlier appeals, i.e., his requests for the x-ray results and follow-up treatment.

In sum, from the evidence submitted by plaintiff, it is clear that none of the appeals referenced by plaintiff in either his complaint or his opposition to the instant motion addresses the question of whether plaintiff should be referred for an MRI. Accordingly, while plaintiff, in connection with his 2003 administrative appeals, exhausted his claim that he was not being provided with x-ray results or follow-up treatment, he did not raise therein

his claim that he was being denied an MRI.

Plaintiff's obligation to exhaust persists as long as some administrative remedy is available to him. See Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). The administrative appeals filed by plaintiff at Lancaster State Prison in 2003 necessarily could not have addressed the question of whether Dr. Lee properly refused to refer plaintiff for an MRI at SVSP in 2004. The full range of administrative remedies thus remained available to plaintiff to pursue the relief he sought after Dr. Lee allegedly refused to refer plaintiff for an MRI. Consequently, even if plaintiff believed Dr. Lee was refusing to comply with a medical directive to provide plaintiff with an MRI, he was required to exhaust that issue through the administrative appeals process at SVSP. The record shows, however, that no administrative appeals official ever reviewed Dr. Fortaleza's recommendation that plaintiff be referred for an MRI, or plaintiff's complaint that the referral was not being honored. Consequently, prior to plaintiff's filing the instant action, neither Dr. Lee nor any prison official with the authority to review Dr. Lee's decision was provided with the opportunity to respond officially to plaintiff's claim that he was entitled to receive an MRI. As the Supreme Court observed in Porter v. Nussle:

> . . . Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. at 525 (internal quotations and citations omitted). In the instant matter, plaintiff's failure to pursue his administrative remedies deprived prison officials of the opportunity to respond to plaintiff's claim against Dr. Lee and remedy the situation, and foreclosed the development of an administrative record clarifying the contours of the dispute.

Consequently, viewing the evidence in the light most favorable to plaintiff, the Court finds plaintiff has failed to establish that he exhausted his administrative remedies with respect to his claim against Dr. Lee. See Celotex Corp., 477 U.S. at 322-23.

United States District Court
For the Northern District of California

1    Accordingly, Dr. Lee is entitled to summary judgment.

2  C.    Plaintiff's Motions

3        On September 27, 2006, plaintiff filed a "Motion for Clarification of Defendant's

4  Proposed Motion for Summary Judgment," wherein plaintiff states that Dr. Lee's motion for

5  summary judgment erroneously bears a signature date of "May 2004."  Plaintiff asks the

6  Court to clarify that the correct date is "May 2006."  Plaintiff's motion will be denied as

7  frivolous.  Dr. Lee's motion for summary judgment and related pleadings bear the proper

8  signature dates, and were filed by the Clerk of the Court on March 1, 2006.  (See Docket

9  Nos. 26, 27, 28, 29.)  There is no need for further clarification.

10       On February 15, 2007, plaintiff filed a "Motion for Preliminary Injunction or

11  Temporary Restraining Order," wherein plaintiff states that on May 10, 2005, he was

12  transferred from SVSP to Corcoran State Prison ("Corcoran"), and that prison officials at

13  Corcoran are refusing to provide him with the back surgery ordered for plaintiff by Dr. Lee

14  in April 2005.[3]  He further states he is in pain and his condition is deteriorating.  He asks the

15  Court to enter a preliminary injunction or temporary restraining order compelling the

16  California Department of Corrections and Rehabilitation to provide him with back surgery.

17  Such motion likewise will be denied.  Plaintiff's current need for back surgery is not at issue

18  in the instant action.  Further, the California Department of Corrections and Rehabilitation is

19  not a party to the instant action, and thus is not subject to an injunction or other orders issued

20  herein.

21  ///

22  ///

23  ///

24

25

26       [3]Although plaintiff states in his motion that he was transferred to Corcoran in May
2005, the correct date appears to be May 2006.  The Court's docket shows that on June 2,
27  2006, plaintiff filed a notice of change of address, advising that he recently had been
transferred to Corcoran State Prison; also on June 2, 2006, he filed a motion asking the Court
28  to continue his medication in light of his transfer to Corcoran on May 10, 2006.  (See Docket
Nos. 37, 38.)

**United States District Court**
For the Northern District of California

1

## CONCLUSION

2      For the reasons set forth above, defendant Dr. Lee's motion for summary judgment is

3 hereby GRANTED.

4      Plaintiff's motions for clarification and for a preliminary injunction or temporary

5 restraining order are hereby DENIED.

6      This order terminates Docket Nos. 26, 42 and 46.

7      The Clerk shall close the file.

8      IT IS SO ORDERED.

9 DATED:   September 28, 2007

10                                          MAXINE M. CHESNEY
                                           United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12